IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:09-CV-549-FL

| | | |
|---|---|---|
| THE ESTATE OF RICHARD MYERS, by | ) | |
| and through its Personal Representative | ) | |
| Richard D. Myers, on behalf of the Estate; | ) | |
| and THE ESTATE OF GAIL MYERS, by | ) | |
| and through its Personal Representative | ) | |
| Richard D. Myers, on behalf of the Estate, | ) | |
| | ) | ORDER |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| WAL-MART STORES, INC.; WAL-MART | ) | |
| REALTY COMPANY; and WAL-MART | ) | |
| STORES EAST, L.P., | ) | |
| | ) | |
| Defendants. | ) | |

This matter comes before the court on defendants' motion to exclude testimony of plaintiffs'

expert Kenneth Britz ("Britz") pursuant to Rule 702 of the Federal Rules of Evidence (DE # 27), and

defendants' motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil

Procedure (DE # 36). Each of these motions has been fully briefed, and the time within which to

further respond has passed. In this posture, the issues raised now are ripe for adjudication. For the

reasons that follow, defendants' motions are granted.

**STATEMENT OF THE CASE**

Plaintiffs, the estates of Richard and Gail Myers ("decedents") by and through their son and

personal representative Richard D. Myers, filed this wrongful death action in Cumberland County

Superior Court on December 2, 2009. Defendants removed the action to this court on December 23,

2009, invoking the court's diversity of citizenship jurisdiction under 28 U.S.C. §§ 1332, 1441, and 1446. Shortly thereafter, on January 4, 2010, defendants filed an answer to the complaint, denying liability and raising a number of affirmative defenses.

Plaintiffs' claims arise out of the accidental and untimely deaths of decedents, who were struck by a speeding automobile in the parking lot of a retail store owned and/or operated by defendants. Plaintiffs allege that the deaths of decedents were caused by defendants' negligent design, construction, maintenance, and supervision of their parking lot, as well as their failure to warn customers of the possibility that vehicles could hazardously travel at excess speeds therein. As already noted, these negligence claims have been brought under North Carolina's wrongful death statute, N.C. Gen. Stat. § 28A-18-2.

During discovery, plaintiffs identified Britz as an expert who would testify as to the allegedly negligent design of defendants' parking lot. On October 1, 2010, defendants filed a motion to exclude the testimony of plaintiffs' expert. They argue that Britz is not qualified to opine on the proper design of the parking lots of retail stores, that he failed to identify an industry standard of care for the design of such parking lots and the placement of traffic control devices, and that his opinions are unreliable and would not aid the trier of fact. Plaintiffs timely rose in opposition, contending that Britz was qualified and that his opinions were reliable. Defendants filed a reply.[1]

On October 21, 2010, following the close of discovery, defendants moved for summary judgment. Defendants argue that plaintiffs' negligence claims fail where plaintiffs have not

---

[1] Plaintiffs filed a sur-reply to the motion regarding expert testimony on November 8, 2010. Defendants object to the filing of the sur-reply. As they correctly note, the court generally allows a party to file a sur-reply only when necessary to respond to arguments raised for the first time in the reply. See, e.g., N.C. Shellfish Growers Ass'n v. Holly Ridge Assocs., LLC, 200 F. Supp. 2d 551, 554 (E.D.N.C. 2001). Such circumstances do not present themselves here, nor have plaintiffs offered other good cause for filing a sur-reply. Accordingly, the court hereby strikes plaintiffs' sur-reply (DE # 41) from the record.

2

established a duty owed to decedents by defendants, a breach of that duty in the circumstances presented here, or causation of the injuries suffered. Plaintiffs responded in opposition, contending that they have put forward sufficient evidence to make a *prima facie* negligence claim and that the ultimate resolution of that claim must be left for the jury. Defendants timely replied.

## STATEMENT OF THE UNDISPUTED FACTS

The facts surrounding the accident that claimed decedents' lives are not in dispute. On December 3, 2007, decedents were at the Tire & Lube Express center at defendants' store located at 2601 Ramsey Street in Fayetteville, North Carolina ("the Store"). While walking towards their vehicle, decedents were struck by another vehicle traveling at an excessive rate of speed through the Store's parking lot. Decedents were pronounced dead at the scene of the accident.

The vehicle that struck decedents was driven by Lynn Lee Bremer ("Bremer"). Bremer suffered from a seizure disorder and was experiencing a seizure at the time of the accident. Unconscious, Bremer drover her car down a two-way parking aisle and then entered a garden center drive-thru. Upon exiting the garden center, her car veered to the right and entered the parking lot where decedents were located, striking and killing them.

## DISCUSSION

A.     Motion to Exclude Expert Testimony

1.     Standard of Review

Rule 702 of the Federal Rules of Evidence, which governs the use and admissibility of the testimony of expert witnesses, reads as follows:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in

3

the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. This rule requires the court to act as a gatekeeper in determining whether proposed expert testimony will be both relevant and reliable before it will be submitted to the jury. See Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 147 (1999); Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 589 (1993).

The touchstone of the relevancy prong is whether the testimony will be helpful to the jury. See United States v. Harris, 995 F.2d 532, 534 (4th Cir. 1993) ("As Rule 702 indicates, expert testimony is only permitted if it assists the trier of fact to understand evidence or to determine a fact in issue."). The district court has broad discretion to decide whether expert testimony is helpful to the jury, or whether it instead is within the common knowledge of the jurors or would be unfairly prejudicial, confusing, misleading, or cumulative under Rule 403. See United States v. Dorsey, 45 F.3d 809, 815 (4th Cir. 1995); Harris, 995 F.2d at 534; United States v. Portsmouth Paving Corp., 694 F.2d 312, 323 (4th Cir. 1982).

The reliability inquiry "is a flexible one focusing on the principles and methodology employed by the expert, not on the conclusions reached." Westberry v. Gislaved Gummi AB, 178 F.3d 257, 261 (4th Cir. 1999) (internal quotation marks omitted). The court may consider whether a particular theory or methodology has been tested, whether it has been subjected to peer review and publication, the known or potential error rate, the existence and maintenance of standards regarding a technique's operation, and whether it has achieved general acceptance in the relevant community. United States v. Crisp, 324 F.3d 261, 265-66 (4th Cir. 2003) (citing Daubert, 509 U.S. at 593-94).

The Fourth Circuit and Supreme court have stressed that these factors are not exclusive, and that "the court has broad latitude to consider whatever factors bearing on validity that the court finds to be useful[,] . . . depend[ing] upon the unique circumstances of the expert testimony involved." Westberry, 178 F.3d at 261 (citing Kumho Tire Co., 526 U.S. at 151).

    2.    Analysis

Plaintiffs offer the testimony of Britz to assist the jury in determining the appropriate standard of care that defendants owed to their customers while in the parking lot of the Store. Britz is an architect, with graduate degrees in architecture and city planning from Harvard University Graduate School of Design. He is currently the president of his own architectural design company. Before that, he served as a project director for the design of hotels and assisted living facilities for Marriott International. Britz frequently has offered expert opinions in the area of "forensic architecture," analyzing for litigants issues surrounding the design of a facility in order to determine whether the design meets relevant professional standards.

Despite these qualifications, defendants argue that Britz does not possess the specialized knowledge, skill, experience, training, or education to give expert testimony regarding *parking lot* design. Plaintiff's rejoinder to this argument is simply that Britz *must* be knowledgeable about parking lot design because the design of hotels and retail establishments "naturally contemplate[s] the deliberate confluence of pedestrian and vehicular traffic." (Pls.' Resp. 9.) The transcript of Britz's deposition indicates that he may have some experience involving the design of parking lots and parking structures in conjunction with the design of other facilities (see Britz Dep. 20:16-21:22, 24:10-12), but the empty platitudes offered by plaintiffs do not add much to the court's understanding of those experiences. In short, beyond noting that Britz is an accomplished architect,

5

plaintiffs have been unable to identify the specific education, training or experiences that would grant him expertise in the area of parking lot design or traffic control.

Assuming that Britz were qualified as an expert in parking lot design, defendants have identified another serious defect in his proposed expert testimony which warrants its exclusion in this case: the absence of "reliable principles and methods . . . applied . . . reliably to the facts of the case." See Fed. R. Evid. 702. Indeed, neither plaintiffs nor Britz has identified any principle or methodology employed by Britz beyond his "subjective determination . . . based on experience." (Britz Dep. 126:14-15.) Although an expert witness may of course testify based on professional and specialized experience, that witness must "explain how [his] experience leads to the conclusion reached, why [his] experience is a sufficient basis for the opinion, and how [his] experience is reliably applied to the facts." United States v. Wilson, 484 F.3d 267, 274 (4th Cir. 2007) (quoting Fed. R. Evid. 702 advisory committee notes). Britz has not done so here.

The court is unprepared to accept Britz's testimony that defendants' parking lot was defectively designed on little more than his say-so. See Alevromagiros v. Hechinger Co., 993 F.2d 417, 421 (4th Cir. 1993) (noting that an expert offered only "his own subjective opinion" and that the court was "unprepared to agree that 'it is so if an expert says it is so'"); see also Fed. R. Evid. 702 advisory committee notes ("The trial court's gatekeeping function requires more than simply 'taking the expert's word for it.'"). Moreover, in the absence of a defined industry standard for parking lot design that incorporates specific safety features, it would be speculative and misleading to allow Britz to offer the proposed testimony. See, e.g., Redman v. John D. Brush & Co., 111 F.3d 1174, 1179 (4th Cir. 1997). Because plaintiffs have failed to show that Britz's testimony is "reliable," as required by Rule 702, that testimony must be and is excluded.

6

B.    Motion for Summary Judgment

1.    Standard of Review

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, 477 U.S. 242, 247-48 (1986) (holding that a factual dispute is "material" only if it might affect the outcome of the suit and "genuine" only if there is sufficient evidence for a reasonable jury to find for the non-moving party). The party seeking summary judgment bears the initial burden of demonstrating the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party then must affirmatively demonstrate with specific evidence that there exists a genuine issue of material fact requiring trial. Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).[2]

2.    Analysis

Each of plaintiffs' claims relies on the alleged negligence of defendants. To succeed in establishing a negligence claim, plaintiffs must prove: (1) the existence of a legal duty or standard of care owed to them by defendants, (2) breach of that duty by defendants, (3) that the breach was the proximate cause of their injury, and (4) that damages resulted from that injury. Camalier v. Jeffries, 340 N.C. 699, 706, 460 S.E.2d 133, 136 (1995). As previously mentioned, defendants challenge each of the first three elements of plaintiffs' underlying negligence claim. They contend

---

[2] In asserting that a fact cannot genuinely be disputed, a party must cite to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). The court is required only to consider those material specifically cited, although it may consider other materials in the record in its discretion. Fed. R. Civ. P. 56(c)(3).

7

that they owed no duty of care to protect against unforeseeable accidents in their parking lot, that

plaintiffs have failed to articulate a standard of care that defendants allegedly breached, and that

Bremer's actions constitute an independent and intervening cause of plaintiffs' injuries for which

defendants may not be held responsible.

It is not disputed that defendants, as the owners and occupiers of business property, owe a

duty of "reasonable care toward all lawful visitors," including customers on the Store's premises.

See Nelson v. Freeland, 349 N.C. 615, 631, 507 S.E.2d 882, 892 (1998) (eliminating distinction

between standard of care owed to licensees and invitees). This duty does not extend to "insur[ing]

the safety of [its] customers, but [instead] to exercis[ing] ordinary care to maintain [its] premises in

such condition that they may be used safely . . . in the manner for which they were designed and

intended." Foster v. Winton-Salem Joint Venture, 303 N.C. 636, 638, 281 S.E.2d 36, 38 (1981); see

also Nelson, 349 N.C. at 632, 507 S.E.2d at 892. The duty to exercise ordinary care "is no more than

a duty to act reasonably. The duty does not require perfect prescience, but instead extends only to

causes of injury that were reasonably foreseeable and avoidable through the exercise of due care."

Fussell v. N.C. Farm Bureau Mut. Ins. Co., Inc., 364 N.C. 222, 226, 695 S.E.2d 437, 440 (2010).

"Whether harm is foreseeable simply depends on the circumstances of each case and is not

determined according to any predetermined set of factors." Estate of Mullis v. Monroe Oil Co., Inc.,

349 N.C. 196, 206, 505 S.E.2d 131, 138 (1998).

Defendants contend that the specific cause of injury in this case – a driver who suffered from

a seizure and lost consciousness as her car maneuvered rapidly and unpredictably through a parking

lot at a high rate of speed – was not reasonably foreseeable or avoidable. Although foreseeability

is generally a question for the jury, see Slaughter v. Slaughter, 264 N.C. 732, 735, 142 S.E.2d 683,

686 (1965), the court agrees with defendants that the harm that occurred here was unforeseeable as a matter of law. There is no case from North Carolina's highest court directly on point, but decisions of other courts applying black-letter negligence principles have concluded that business owners are not liable for injuries caused by out-of-control vehicles in their parking lots.

For example, in Stratioti v. Bick, 704 F.2d 1052 (8th Cir. 1983), the Eighth Circuit faced litigation involing an automobile in the parking lot of a Shopper's City retail store which unexpectedly accelerated due to a mechanical problem, striking and killing a pedestrian. Applying Minnesota law, the Eighth Circuit held that "the proprietor of a shopping center may reasonably expect that drivers will use parking areas in a normal way," and that injuries caused by runaway vehicles are thus unforeseeable. Id. at 1055. The Eighth Circuit stated that it was unwilling to

> classify this accident in a broad category of pedestrian-vehicle conflicts which could have been foreseen. This was not a normal occurrence within the scope of the anticipated use of the parking lot; it was a freak accident. Its cause cannot reasonably be said to have resulted from anticipated pedestrian-vehicle conflict, but stemmed specifically from a mechanically defective vehicle out of control.

Id.

In addition to the Eighth Circuit, the highest courts of a number of states have held that a business has no obligation to protect those on its premises from runaway vehicles, which are inherently unforeseeable. See, e.g., Albert v. Hsu, 602 So. 2d 895 (Ala. 1992); Nicholson v. MGM Corp., 555 P.2d 39 (Alaska 1976); Mack v. McGrath, 150 N.W.2d 681 (Minn. 1967) (cited in Stratioti); Carpenter v. Stop-N-Go Markets of Georgia, Inc., 512 So. 2d 708 (Miss. 1987); Cromer v. Hutto, 280 S.E.2d 202, 203 (S.C. 1981); see also Kusmirek v. MGM Grand Hotel, Inc., 73 F. Supp. 2d 1222 (D. Nev. 1999) (applying Nevada law). But see Springtree Props., Inc. v. Hammond, 692 So.2d 164 (Fla. 1997); Marshall v. Burger King Corp., 856 N.E.2d 1048 (Ill. 2006). These

9

decisions, while not binding on the court, are persuasive. As noted by a sister court, granting

summary judgment to a defendant store owner on a negligence claim brought by a pedestrian who

had been hit by a driver under the influence of narcotics in the store's parking lot,

> We are not unmindful of the obvious fact that at times operators lose control over the
> forward progress and direction of their vehicles either through negligence or as a
> result of defective mechanisms, which sometimes results in damage or injury to
> others. In a sense all such occurrences are foreseeable. They are not, however,
> incidents to ordinary operation of vehicles, and do not happen in the ordinary and
> normal course of events. When they happen, the consequences resulting therefrom
> are matters of chance and speculation. If as a matter of law such occurrences are held
> to be foreseeable and therefore to be guarded against, there would be no limitation
> on the duty owed by the owners of establishments into which people are invited to
> enter. Such occurrences fall within the category of the unusual or extraordinary, and
> are therefore unforeseeable in contemplation of the law.

Davis v. Wal-Mart Stores, Inc., 64 F. Supp. 2d 1176, 1179-80 (M.D. Ala. 1999) (quoting Albert,

602 So. 2d at 898).

As previously noted, North Carolina is not one of the states which has specifically discussed

the liability of a business owner for injuries caused by runaway vehicles in its parking lot.[3] However,

the North Carolina Supreme Court has held that the duty of a business proprietor is to maintain his

premises so that they may be used safely *"in the manner for which they were designed and intended."*

Foster, 303 N.C. at 638, 281 S.E.2d at 38 (emphasis added). As the Eighth Circuit noted, "the

proprietor of a shopping center may reasonably expect that drivers will use parking areas in a normal

way." Stratioti, 704 F.2d at 1055. The language in Foster suggests that the North Carolina Supreme

Court would also hold that a store owner is liable for preventable injuries caused by "anticipated

pedestrian-vehicle conflict" but not for injuries caused by "freak accident[s]." See id.

---

[3] Because this court is adjudicating a state law claim pursuant to its diversity jurisdiction, it must "apply the
governing state law, or, if necessary, predict how the state's highest court would rule on an unsettled issue." Horace
Mann Ins. Co. v. Gen. Star Nat'l Ins. Co., 514 F.3d 327, 329 (4th Cir. 2008).

Moreover, analogous North Carolina cases strongly suggest that the North Carolina Supreme Court would find the specific injury here to be unforeseeable because there had been no previous pedestrian-vehicle accidents caused by runaway vehicles in the Store's parking lot. In Aaser v. City of Charlotte, 265 N.C. 494, 499, 144 S.E.2d 610, 615 (1965), the Supreme Court held that a proprietor is liable for a dangerous condition arising from the acts of third parties only if he knows about the condition or "it had existed long enough for him to have discovered it by the exercise of due diligence and to have removed or warned against it." In Aaser, the court concluded that defendant, the operator of a sports arena, was not liable for injuries caused by a group of boys playing in a dangerous manner in the corridors of the arena, reasoning that there was no evidence that the arena's owner was aware of the extent of such horseplay on prior occasions, nor did it have any reason to suppose that these activities would recur. As such, the court held that plaintiff's injury, caused by that horseplay, was not reasonably foreseeable. Id. at 500-01, 144 S.E.2d at 615-16.

Applying Aaser to a third party's assault of a patron in a mall parking lot, the Supreme Court in Foster v. Winston-Salem Joint Venture, 303 N.C. at 639-41, 281 S.E.2d at 38-40, held that the mall could be liable for negligently providing insufficient security at the parking lot because there had been at least twenty-nine previous incidents of crime. The Foster court found that this previous criminal activity was sufficient to charge the mall with knowledge that the parking lot was unreasonably dangerous to patrons. Id. Similarly, in Murrow v. Daniels, 321 N.C. 494, 364 S.E.2d 392 (1988), the court concluded that a business could be liable in negligence for an assault on its property where defendant knew of criminal activity in the vicinity of the parking lot (as opposed to within the parking lot itself), but it nevertheless reiterated that "a proprietor of a public business establishment has a duty to exercise reasonable or ordinary care to protect his patrons from

11

intentional injuries by third persons [only] *if he has reason to know that such acts are likely to occur.*" Id. at 500, 364 S.E.2d at 397 (emphasis added).

Aaser, Foster, and Murrow suggest that a business owner is liable for the convergence of the unreasonably dangerous condition of its premises and the wrongful acts of a third party only where previous incidents of a like nature would have placed the business owner on notice of such danger. Plaintiffs here have put forward no evidence that would have put defendants on notice that their parking lot was unreasonably dangerous because an out-of-control vehicle driven by an unconscious patron might veer into other patrons. Even approaching the question at a much higher level of generality, plaintiffs have not put forward any evidence that would have put defendants on notice of the dangerous condition of their parking lot due to any normal or abnormal operation of vehicles therein. The record does not contain any indication of any other vehicular-pedestrian accident occurring in the Store's parking lot prior to that which is the subject of this lawsuit.

For these reasons, this court concludes that the North Carolina would either adopt a *per se* rule that business owners are not liable for accidents caused by runaway vehicles in their parking lots, or would apply long-standing North Carolina case law to conclude that the specific injury here was unforeseeable where there had been no previous pedestrian-vehicle accidents in the Store's parking lot. As such, plaintiffs cannot establish any duty that may have been breached by defendants in this case. While decedents' deaths are of course tragic, defendants had no obligation to protect them from the freak accident that occurred here.[4]

---

[4] Even assuming defendants owed decedents a duty of care, plaintiffs have not shown how defendants breached that duty. In other words, they fail to show what steps defendants should have taken to prevent the accident. The parties agree that the testimony of an expert "is necessary to establish the standard of care . . . and the subsequent failure by [defendants] to exercise the property duty of care." (Pls.' Resp. Opp. Summ. J. 8; see also Defs.' Mem. Supp. Summ. J. 10-12; Defs.' Reply 4.) For the reasons already given, the testimony of plaintiff's expert has been excluded.

(continued...)

12

With no duty on the part of defendants, plaintiffs' underlying negligence claim fails. Where Bremer's driving was not foreseeable to defendants, they had no obligation to design, construct, maintain, or supervise their parking lot in a manner that would have prevented the accident from occurring. Nor, obviously, did defendants have a duty to warn against dangers of which they were unaware and could not have foreseen. See Foster, 303 N.C. at 368-69, 281 S.E.2d at 638 ("[W]here circumstances existed which gave the owner reason to know that there was a likelihood of conduct on the part of third persons which endangered the safety of his invitees, a duty to protect or warn the invitees could be imposed."). Because plaintiffs' claims fail as a matter of law, defendants' motion for summary judgment is granted.

## CONCLUSION

For the reasons set forth above, defendants' motions to exclude expert testimony (DE # 27) and for summary judgment (DE # 36) are GRANTED. The Clerk of Court is directed to strike plaintiffs' sur-reply at docket entry 41 from the record, to enter judgment in favor of defendants, and to close this case.

SO ORDERED, this the 8ᵗʰ day of April, 2011.

LOUISE W. FLANAGAN
Chief United States District Judge

---

[4](...continued)
Moreover, foreseeability is not only an element in determining whether a duty of care existed, but also whether the breach of that duty proximately caused plaintiffs' injuries. Because the court holds that no duty existed in this case, it need not reach the issue of proximate cause. See, e.g., Stein v. Asheville City Bd. of Educ., 360 N.C. 321, 328, 626 S.E.2d 262, 268 n.5 (2006). However, the court does believe it is important to note that neither plaintiffs' expert nor any other individual providing testimony on behalf of the parties indicated that *any* specific additional steps taken by defendants would have prevented the accident or the injuries to decedents. "[O]ne event cannot be the proximate cause of another if, had the first event not occurred, the second would have occurred anyway." Ratliff v. Duke Power Co., 268 N.C. 605, 614, 151 S.E.2d 641, 648 (1966).

13